# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH L. RYAN, | )<br>) |
| Plaintiff, | )<br>) Civil Action No. 14-1048 |
| v. | )<br>) |
| PNC FINANCIAL SERVICES GROUP, INC., AND AFFILIATES LONG-TERM DISABILITY PLAN, | )<br>) Judge Nora Barry Fischer<br>)<br>) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

**I.   INTRODUCTION**

Presently before the Court are the respective motions for summary judgment (ECF Nos. 28 and 32) filed by Elizabeth L. Ryan ("Plaintiff") and PNC Financial Services Group, Inc., and Affiliates Long-Term Disability Plan ("Defendant" or "Plan"), on May 29, 2015, pursuant to Federal Rule of Civil Procedure 56(a).  Both parties seek judgment as a matter of law with respect to all claims contained in Plaintiff's Amended Complaint (ECF No. 3) of August 15, 2014, wherein she seeks redress pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(b), for improper denial of long-term disability benefits.  This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question).  For the following reasons, Plaintiff's motion shall be DENIED, and Defendant's motion shall be GRANTED.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was employed by PNC Financial Services Group, Inc. ("PNC"), beginning on or about November 16, 2009, in the position of Credit Audit Function Manager. (ECF Nos. 30 at ¶ 7; 38 at ¶ 7). As a function of her full-time employment, Plaintiff was enrolled as a participant in the Plan. (ECF Nos. 30 at ¶ 3; 38 at ¶ 3). The Plan is a self-funded welfare benefit plan governed by ERISA, and provides eligible employees absent for longer than ninety-one days with long-term disability benefits ("LTD") of up to sixty percent of the employee's base salary. (ECF Nos. 30 at ¶ 2; 38 at ¶ 2). Plan funds are held in a pre-established, independent trust; PNC holds no residual interest in the trust, and all trust funds are dedicated solely for the benefit of eligible employees. (*Id.*). PNC contracted with Liberty Life Assurance Company of Boston ("Liberty") to act as the Plan's Claims Administrator. (ECF Nos. 30 at ¶ 5; 38 at ¶ 5).

Plaintiff began receiving treatment for Lyme disease in 2011. Dr. Franne R. Berez, M.D. initially managed Plaintiff's care. Plaintiff was then referred to Dr. Joseph T. Joseph, M.D., an infectious disease specialist. Dr. Joseph's treatment regimen consisted primarily of the ongoing administration of various antibiotic medications (AR at 53 – 64, 175, 204 – 78)[1], including administration of intravenous antibiotics beginning on or about December 28, 2012, and continuing through May 27, 2013 (AR at 281 – 621). While under Dr. Joseph's care, Plaintiff applied for, and received, short-term disability for Lyme disease-related symptoms which precluded Plaintiff from performing the duties required of her position. (ECF Nos. 30 at ¶ 11; 38 at ¶ 11). The seven core functions of Plaintiff's position were:

> Essential Function No. 1 - Evaluate risk rating accuracy, quality of risk analysis and monitoring, adherence to policies and procedures, credit underwriting/risk management, credit administration, problem loan management, and management information systems/data integrity;

---

[1] (Citations to ECF No. 24, the administrative record, *hereinafter*, "AR at __").

> Essential Function No. 2 - Provide technical guidance and assistance on credit/audit procedures. Monitor key business initiatives and provide insight pertaining to control issues and risk activities. Evaluate current and emerging risks on an ongoing basis;
>
> Essential Function No. 3 – Evaluate corrective measures taken to address unresolved matters, follow up on the progress being made to address unresolved control matters and prepare summary reports to executive management;
>
> Essential Function No. 4 - Recommend improvement related to monitoring activities and communication mechanisms. Build awareness of external leading practices and benchmarks to embed within the credit/audit function;
>
> Essential Function No. 5 - Provide guidance and insight pertaining to credit/audit issues and necessary risk management activities to management;
>
> Essential Function No. 6 - Proactively partner with the AGA and Director of Credit/Audit, Corporate Credit Policy, and Senior and Executive Management to provide audit, consultation and subject matter of expertise for new business strategies; and,
>
> Essential Function No. 7 - Communicate findings on an ongoing basis to Director of Credit/Audit.

(ECF Nos. 30 at ¶ 9; 38 at ¶ 9). Plaintiff's last day at work was on or about October 19, 2012. (ECF Nos. 30 at ¶ 10; 38 at ¶ 10). Plaintiff remained on short-term disability until January 20, 2013. (ECF Nos. 30 at ¶ 11; 38 at ¶ 11). Between January 10 and February 13, 2013, Plaintiff completed the process of applying for LTD in accordance with Plan requests. (ECF Nos. 30 at ¶¶ 11 – 12; 38 at ¶¶ 11 – 12).

Plaintiff was denied LTD by letter dated March 8, 2013. (ECF Nos. 30 at ¶ 16; 38 at ¶ 16). Plaintiff appealed the decision, but was again denied LTD on October 29, 2013, following the submission of extra medical documentation. (ECF Nos. 30 at ¶ 18; 38 at ¶ 18). Plaintiff again appealed the Plan's decision, but was denied LTD for a third and final time on May 2, 2014. (ECF Nos. 30 at ¶¶ 21, 24; 38 at ¶¶ 21, 24). Having exhausted all Plan remedies, Plaintiff filed suit in this Court on August 6, 2014. (ECF Nos. 1; 30 at ¶ 4; 38 at ¶ 4). An Amended

Complaint followed on August 15, 2014. (ECF No. 3). The parties filed respective motions for summary judgment (ECF Nos. 28 and 32) on May 29, 2015. A hearing on the motions was held before this Court on October 29, 2015. (ECF Nos. 49 and 50). The matter has been fully briefed (ECF Nos. 29, 30, 31, 33, 34, 37, 40, 41, 44, and 45) and is ripe for disposition.

### III. STANDARD OF REVIEW

A grant of summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Further, the benefit of the doubt will be given

to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F.App'x 139, 141 n. 4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F. 3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

V. **DISCUSSION**

In order to demonstrate eligibility for LTD under the Plan, it is incumbent upon Plaintiff to demonstrate that she is unable to perform the material or essential duties of her occupation as it is normally performed in the national economy. (AR at 141). In all three denial letters, Defendant justified its decision to withhold LTD by citing to recurring deficiencies in Plaintiff's submissions and the resultant failure to demonstrate that Plaintiff was unable to fulfill her job duties. Of central importance were the equivocal notations contained in Dr. Joseph's treatment notes. (AR at 142, 657, 700 – 02). Dr. Joseph would opine on Plaintiff's complaints of fatigue, body pain, vertigo, memory loss, shortness of breath, irregular sleep patterns, twitching, headache, and "brain fog," among others, but would also regularly note that upon examination, Plaintiff was most often unremarkable, was "[d]oing OK with no major complaints," and "seems to be doing all right." (*Id.*). Defendant also looked to the lack of confirmatory blood tests, and

objective physical and cognitive evaluations.  (*Id.*).  Additionally, neither Dr. Joseph nor Dr. Berez explicitly provided any specific functional limitations on evaluation forms.  (*Id.*).

Plaintiff's medical files were independently reviewed by three different infectious disease specialists, none of whom were able to conclude – based upon the medical evidence provided by Plaintiff – that Plaintiff suffered from Lyme disease.  (AR at 131 – 36, 622 – 55, 692 – 96). These three physicians all highlighted the lack of specific limitations findings and objective physical and cognitive testing in Dr. Joseph and Dr. Berez's records.  (*Id.*).  They also noted that neither of Plaintiff's treating physicians provided generally recognized treatments for Lyme disease or relied upon proper blood test results for diagnosis of long-term and/or recurring Lyme disease infection.  (*Id.*).

In response, Plaintiff primarily argues that Defendant's decision was an abuse of discretion because there was no objective medical basis for rejecting her treating physicians' diagnoses of Lyme disease infection.  (ECF No. 29 at 5 – 8).  She cites to the lack of an independent, physical evaluation by Defendant, positive results for one component of her diagnostic blood tests, and Dr. Joseph's belief that the diagnosis of Lyme disease is not solely dependent upon blood testing.  (*Id.*).

ERISA allows for civil suits by beneficiaries "to recover benefits due…under the terms of [his or her] plan, to enforce [his or her] rights under the terms of the plan, or to clarify [his or her] rights to future benefits under the terms of the plan."  *Lamanna v. Special Agents Mutual Benefits Assoc.*, 546 F.Supp.2d 261, 282 (W.D. Pa. 2008) (citing 29 U.S.C. § 1132(a)(1)(B)).  A denial of benefits under § 1132(a)(1)(B) would normally be reviewed under a *de novo* standard; however, where, as here, the Claims Administrator has the discretionary authority to determine

6

eligibility for benefits, the Court must afford greater deference to the determination of the Claims Administrator. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

As such, the Court must apply the "arbitrary and capricious" standard to the present case. *Marshall v. AT&T Umbrella Benefit Plan No. 1*, 804 F.Supp.2d 408, 415 (W.D. Pa 2011). This standard requires the Court to accord "extreme deference," and the Court may only overturn the claim denial "if it is clearly not supported by the evidence of record," or if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (quoting *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000)). It is Plaintiff's burden to demonstrate that Defendant's decision was arbitrary and capricious. *Id.* (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 – 40 (3d Cir. 1997)); *Lamanna*, 546 F.Supp.2d at 288 (citing *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 435 – 36 (3d Cir. 2001)).

Plaintiff's arguments can be boiled down to one discrete issue: whether Plaintiff has provided evidence sufficient to convince the Court that Defendant's deference to the opinions of the reviewing physicians, as opposed to Plaintiff's treating physicians, was unreasonable or unsupported by substantial evidence. Indeed, all of Defendant's benefits denials were founded upon the findings of those reviewing physicians, and the denials would be otherwise factually weak without said findings. It has been held that "ERISA plans need not afford special deference to the claimant's treating physician, and are under no 'discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.'" *Marshall*, 804 F.Supp.2d at 417 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). It is the Plan's duty to resolve factual disputes, and it is not an automatic abuse of discretion when the dispute is resolved in favor of the Plan. *Sollon v. Ohio Cas. Ins. Co.*, 396 F.Supp.2d 560, 586 (W.D. Pa. 2005).

The record before the Court shows that the reviewing physicians have interpreted Plaintiff's IGG/IGM Western Blot test results to be inconclusive, at best, for Lyme disease because the tests lack a positive result on the IGG portion of the test. The reviewing physicians all generally noted that for individuals suffering illness for over a month, a negative IGG[2] in combination with a positive IGM tends to mean that the IGM is a false-positive. (AR at 131 – 36, 158, 622 – 55, 692 – 96). In addition, all the reviewing physicians found that the physical and cognitive ailments complained of by Plaintiff were non-specific to Lyme disease. (*Id.*). There were no documented instances of erythema migrans, abnormally hot, swollen joints, cardiac abnormality, peripheral neuropathy, cranial nerve palsies, or abnormal cerebrospinal fluid findings characteristic of Lyme disease. (*Id.*). While Dr. Joseph disagreed with the reviewing physicians' ultimate conclusions, Defendant's decision to rely upon the thoroughly explained opinions of three independent infectious disease specialists engaged in a "professional disagreement" with Plaintiff's treating physician is not arbitrary and capricious. *Bluman v. Plan Adm'r and Trs. for CNA's Integrated Disability Program*, 491 F.App'x 312, 315 – 16 (3d Cir. 2012) (citing *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004)). Incidentally, to the extent Plaintiff believes that the Plan should have instead ordered and relied upon the opinion of an independent physician that physically examined Plaintiff, it should be noted that "there is no legal requirement for a plan administrator to demand an independent

---

[2] To the extent that Plaintiff attempts to rely upon a study of IGG negative individuals who were nonetheless considered to suffer Lyme disease to support her argument that a positive IGG blood test is not dispositive of the existence of Lyme disease, the Court notes that for those individuals with IGG negative blood test results, there are other trademark features of Lyme disease that needed to be present: erythema migrans in conjunction with early neurologic or cardiac symptoms, radiculoneuropathy, Lyme arthritis, cognitive impairment, parathesias, dysthesias, and/or profound fatigue. (ECF No. 29-1 (Mark S. Klempner, M.D., et al., Two Controlled Trials of Antibiotic Treatment in Patients with Persistent Symptoms and a History of Lyme Disease, New Eng. J. Med., Vol. 345, No. 2, July 12, 2001, at 85)). Plaintiff provided no evidence that she met these diagnostic criteria. Hence, her attempt to bolster her claims by citing to this study is unavailing.

medical examination as part of its review of a claim for disability benefits under an ERISA-governed plan." *Sollon*, 396 F.Supp.2d at 586.

The Court would be remiss if it did not emphasize that Plaintiff had ample time to supplement her medical record during the appeals process, and was informed of the exact nature of testing for which Liberty was looking when reviewing her claims. For example, in its October 29, 2013 appeal denial, Liberty explicitly stated that it would be helpful if Plaintiff provided evidence of psychological consultations, neuropsychological testing, and formal occupational assessments. (AR at 657). Plaintiff also had the benefit of statements from independent infectious disease specialists to the same effect. Plaintiff readily admitted that no neuropsychological testing results were ever submitted. (ECF No. 50 at 24). Yet, no explanation for this failure was provided to the Court.

## VI. CONCLUSION

In the present case, after reviewing Plaintiff's medical record three times, including two additional opportunities for Plaintiff to supplement the record, and with the aid of three independent infectious disease specialists, the Plan concluded that Plaintiff had not proven that she was disabled due to Lyme disease. Each reviewing physician provided significant discussion, and relied upon their extensive backgrounds as well as published research data to reach the conclusion that Plaintiff was not disabled due to Lyme disease. Plaintiff clearly provided a significant amount of medical evidence that she and her doctors believed pointed to a diagnosis of Lyme disease, and was quick to point out that "if the insurer wishes to call into question the scientific basis of those reports…, then the burden will lie with the insurer to support the basis of its objection." (ECF No. 29 at 6 (quoting *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 391 (3d Cir. 2003))). In light of the level of deference owed to the Plan,

9

the Court finds that Defendant has met this burden. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 28) is denied, and Defendant's Motion for Summary Judgment (ECF No. 32) is granted.

Appropriate Orders follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: February 1, 2016.
cc/ecf: All counsel of record.